Maureen Beyers, 017134
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mbeyers@omlaw.com

Lawrence Elbaum (*pro hac vice* to be filed)
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103-0040
(212) 237-0084
lelbaum@velaw.com

**Attorneys for Plaintiff RiceBran Technologies**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| RiceBran Technologies,<br><br>  Plaintiff,<br><br>vs.<br><br>LF-RB Management LLC; Gary L. Herman; Michael Goose; Stephen D. Baksa; Larry Hopfenspirger; Richard Jacinto II; Edward M. Giles; and Richard Bellofatto,<br><br>  Defendants. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff RiceBran Technologies ("RiceBran," or the "Company"), for its complaint against Defendants LF-RB Management LLC ("LF-RB"), Gary L. Herman, Michael Goose, Stephen D. Baksa, Larry Hopfenspirger, Richard Jacinto II, Edward M. Giles and Richard Bellofatto (collectively, the "LF-RB Group," or "Defendants"), by and through its undersigned counsel, alleges, upon personal knowledge as to itself, and upon information and belief as to all other matters, the following:

**NATURE OF THE ACTION**

1. RiceBran is a microcap company based in Arizona under ambush by the LF-RB Group – a hostile activist investor group based in New York City that barely owns 9% of the Company's shares. The LF-RB Group has repeatedly and intentionally

violated the federal securities laws as part of its plot to seize control of the Board of Directors (the "Board") of RiceBran through an illegal proxy contest.

2. Defendants have been scheming against the Company since mid-2015, when members of the LF-RB Group cornered RiceBran's CEO at an industry conference and announced their intentions to take over the Company during the course of the year. The Company heard virtually nothing from the LF-RB Group until late May 2016, when they suddenly demanded five out of the seven seats of the Board and the ouster of the Company's CEO. Defendants threatened to wage a costly and distracting proxy fight to take over the Board at the Company's annual meeting of shareholders on June 22, 2016 (the "Annual Meeting"), which was less than one month away at the time.

3. The California Corporations Code (the "Cal. Code") and the Company's bylaws require that **only shareholders of record are eligible to nominate director candidates to the Board**. Under the bylaws, valid nominations must be received no later than twenty (20) days before the Company's annual meeting of shareholders. Defendants waited until nearly the eve of the nomination deadline for the Annual Meeting and purported to submit a notice of nomination to the Board on May 31, 2016 (the "Nomination Notice"), nominating five directors to the Board (the "Dissident Candidates"). The Nomination Notice was defective because none of the members of the LF-RB Group named in the notice (the "Nominating Dissidents") were shareholders of record of RiceBran on the date the Nomination Notice was received by the Company. The LF-RB Group failed to timely cure this defect and, therefore, never submitted a valid notice of nomination of the Dissident Candidates with respect to the Annual Meeting.

4. Defendants have coupled their defective Nomination Notice with illegal proxy solicitation activities and illegal public filings (collectively, the "Illegal Proxy Solicitations"). Every press release and public filing the LF-RB Group made in connection with its proxy contest and filed with the Securities and Exchange Commission (the "SEC") on Schedule 14A is replete with violations of the proxy

solicitation rules under Section 14(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act") and Regulation 14A promulgated thereunder (collectively, the "Proxy Rules"). Members of the LF-RB Group have also secretly and unlawfully solicited proxies from RiceBran shareholders in violation of the Proxy Rules.

5. Moreover, the LF-RB Group's public filings with the SEC, including proxy solicitation materials and other required disclosures, violate the Proxy Rules and the disclosure and reporting rules under Section 13(d) of the Exchange Act and Regulation 13D promulgated thereunder (collectively, the "Schedule 13D Rules") because they fail to identify all members of the LF-RB Group who are acting together to influence control of the Company and who are participating in the solicitation of proxies with respect to the Dissident Candidates for the Annual Meeting. Defendants have perpetrated the Illegal Proxy Solicitations to gain unfair leverage over RiceBran in the proxy contest -- materially and irreparably harming the Company and its shareholders.

6. RiceBran held the Annual Meeting on June 22, 2016. At the Annual Meeting, the Defendants formally nominated the Dissident Candidates. The chairman of the Annual Meeting declared that the nominations were not made in accordance with the procedures prescribed by the Company's bylaws because the Nomination Notice was defective. Defendants disputed the determinations of the chairman of the meeting.

7. Accordingly, RiceBran seeks declaratory relief from this Court: (a) declaring that the nominations of the Dissident Candidates are defective because the nominations violate the Company's bylaws and California laws (b) declaring that the nominations of the Dissent Candidates were properly rejected by the chairman of the Annual Meeting; and (c) declaring that all votes solicited by the LF-RB Group in favor of the Dissident Candidates are null and void due to the defective Nomination Notice and the Illegal Proxy Solicitations.

**THE PARTIES**

8. Plaintiff RiceBran is an Arizona-based company with its principal place of business at 6720 North Scottsdale Rd., Suite 390, Scottsdale, Arizona, and is

incorporated under the laws of California. RiceBran operates as a human food ingredient, functional food and animal nutrition company focused on the procurement, bio-refining and marketing of numerous products derived from rice bran.

9. Defendant LF-RB is a Delaware limited liability company. Upon information and belief, LF-RB's members are Defendants Gary Herman and Michael Goose, neither of whom reside in Arizona, as set forth more fully below.

10. Defendant Gary L. Herman maintains a business address at 720 Fifth Ave., 10th Floor, New York, New York 10019 and a home address at 166 Sebonac Rd., Southampton, New York 11968.

11. Defendant Michael Goose maintains a business address 720 Fifth Ave., 10th Floor, New York, New York 10019 and a home address at 333 East 91st St., New York, New York 10128.

12. Defendant Stephen D. Baksa maintains a business and home address at 2 Woods Lane, Chatham, New Jersey 07928.

13. Defendant Larry Hopfenspirger maintains a business and home address at 2025 Nicollet Ave. South, #203, Minneapolis, Minnesota 55404.

14. Defendant Richard Jacinto II maintains a business address at 4775 Collins Avenue, # 3003, Miami Beach, Florida 33140 and, on information and belief, a home address at 394 Saddle Back Trail, Franklin Lakes, New Jersey 07417.

15. Defendant Edward M Giles maintains a home address at 17 Heights Rd., Manhasset, New York 11030.

16. Defendant Richard Bellofatto maintains a home address at 25 Carle Rd., Westbury, New York 11590.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over the subject matter of this action based on 28 U.S.C. §§ 1331, 1332 and 2201, Section 27 of the Exchange Act, 15 U.S.C. § 78aa,

- 4 -

and Sections 13(d) and 14(a) of the Exchange Act, 15 U.S.C. §§ 78m(d), 78n(a) and the rules and regulations promulgated thereunder.

18.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 and Section 27 of the Exchange Act 15 U.S.C. § 78aa, because various acts or transactions constituting the allegations herein occurred within the District of Arizona.  This includes the Annual Meeting, at which the dispute arose that gave rise to this controversy and which was attended in person by members of the LF-RB Group, the Board and management of RiceBran as well as many of the Company's shareholders.  This also includes the LF-RB Group's Illegal Proxy Solicitations that were (i) transmitted to and received by RiceBran, whose headquarters is in the District of Arizona; and (ii) filed with the SEC in anticipation and for the purpose of their distribution to RiceBran's shareholders, including shareholders located within the District of Arizona, in order to obtain proxies to be used at the Annual Meeting which, as noted, took place in the District of Arizona.

## FACTUAL BACKGROUND

*The LF-RB Group Plots to Take Control of the Company*

19.     In or around mid-2015, members of the LF-RB Group approached the CEO of RiceBran at an industry conference and threatened to take control of the Company some time in 2016.

20.     Beginning in or around December 2015, members of the LF-RB Group secretly delivered a PowerPoint presentation (the "Presentation") to select RiceBran shareholders and other potential investors.  The Presentation harshly criticizes RiceBran and its Board and sets forth the LF-RB Group's plan to take over the Company.

21.     The LF-RB Group, however, did not make a formal request of the Company until May 25, 2016, when they suddenly demanded five out of the seven seats of the Board and the ouster of the Company's CEO.

22. Defendants refused to negotiate or even to permit the Company an opportunity to vet their proposed candidates. In fact, they even refused to disclose the names of their candidates. Instead, they threatened to wage a costly and distracting proxy fight to replace nearly the entire Board at the Annual Meeting - - which was less than one month away at the time - - if RiceBran did not agree to postpone the Annual Meeting by forty-five (45) days. They gave the Board a deadline of 12:00 p.m. EDT on May 26, 2016 - - less than 24 hours. The Board did not even have enough time to convene in that timeframe.

*The LF-RB Group Submits a Defective and Untimely Nomination Notice*

23. Article II, Section 12 of the Company's bylaws require that **only shareholders are eligible to nominate director candidates to the Board**. Section 185 of the Cal. Code defines "shareholders" as "one who is a holder of record of shares" of a corporation.

24. Article II, Section 12 of the Company's bylaws further provide that timely nominations by eligible shareholders of record must be received by the Company no later than twenty (20) days before the annual meeting of shareholders (the "Nomination Deadline").

25. Defendants waited until nearly the eve of the Nomination Deadline for the Annual Meeting and purported to submit the Nomination Notice on May 31, 2016, nominating the Dissident Candidates. The Company did not receive the Nomination Notice until June 1, 2016.

26. The Nomination Notice was defective because none of the Nominating Dissidents were shareholders of record of RiceBran on date the Nomination Notice was received by the Company. The Company confirmed this was the case by obtaining a registered list of shareholders of record (the "Registered List") from RiceBran's transfer agent - - American Stock Transfer & Trust Co. - - as of both May 31, 2016 and June 2,

2016. None of the Nominating Dissidents were listed on the Registered List as of either date.

27. On June 3, 2016, the Company responded to the Nomination Notice by letter, through counsel, asking the LF-RB Group for information showing that any of the Nominating Dissidents was a shareholder of record of the Company as of the date the Nomination Notice was received by the Company.

28. On June 9, 2016, counsel for the LF-RB Group sent a letter to the Company's counsel explaining that Defendant Stephen Baksa became a shareholder of record of the Company as of June 8, 2016 – nearly one week after the Nomination Deadline.

29. On June 10, 2016, counsel for the LF-RB Group sent a letter to the Company's counsel responding directly to the Company's June 3 letter. The June 10 letter failed to demonstrate that any of the Nominating Dissidents was a shareholder of record of the Company on or before the Nomination Deadline.

30. Accordingly, the LF-RB Group never submitted a valid notice of nomination for the Dissident Candidates with respect to the Annual Meeting.

***Defendants Use Illegal Proxy Solicitations to Gain Unlawful Leverage Over the Company During the Proxy Contest.***

31. Members of the LF-RB Group (including members who remain undisclosed to the public, the Company and to the SEC) have secretly and unlawfully solicited proxies from RiceBran shareholders, both prior to and after the LF-RB Group filed its proxy statement, and have failed to properly file these materials with the SEC or to properly disclose the identity and ownership interests of each member of the LF-RB Group (the "Undisclosed Proxy Materials") in clear violation of the Proxy Rules and the Schedule 13D Rules.

32. For example, the Company has a reasonable basis to believe that Bruce Galloway has been soliciting proxies on behalf of the LF-RB Group since at least

February 2016. Mr. Galloway is an individual with close business ties to at least some of the members of the LF-RB Group, including Defendant Mr. Herman, who is a partner of Galloway Capital Management LLC, of which Mr. Galloway is the managing member. Upon information and belief, Mr. Galloway either directly or indirectly owns at least 0.8% of the Company's shares.

33. On February 25, 2016, Mr. Galloway sent an email to one of the Company's shareholders with the subject line "LF RB Presentation," which attached the Presentation, and contained the following text:

> Here is presentation for Rice Bran technology. The company has proprietary technology to stabilize the healthiest food on the planet. 12 billion pounds per year are essentially thrown out. The company should be doing 125-135mm and 25-30mm EBITDA but the management is the worst team I have ever come across. Gang that can't shoot straight. We have Irwin Simos's nephew and right hand guy. (Hain- Celsetial) This is a super food You as a doctor will appreciate it. It lowers blood pressure, blood sugar and cholesterol all at the same time.

(the "February 25 Illegal Solicitation").

34. On February 26, 2016, Mr. Galloway sent the following text message to a shareholder of the Company: "Getting ready to file. You with us? …… In NY. You want to meet with Michael Goose. Irwin Simon's nephew, HAIN." (the "February 26 Illegal Solicitation").

35. On April 1, 2016, Mr. Galloway sent an email to the same shareholder of the Company, bearing the subject line: "any interest in filing with us?? Stock will double." (the "April 1 Illegal Solicitation," together with the February 25 Illegal Solicitation and the February 26 Illegal Solicitation, the "Illegal Galloway Solicitations").

36. The Company also has a reasonable basis to believe that Russell Anmuth ("Mr. Anmuth"), of Gotham Holdings, is soliciting votes on behalf of the LF-RB Group. Since last year, and very recently, Mr. Anmuth and Gotham have threatened to use a

proxy contests as a means to achieve control of the Company (the "Illegal Anmuth Solicitations").

37. Even though Mr. Galloway and Mr. Anmuth have been perpetrating the Illegal Galloway Solicitations and Illegal Anmuth Solicitations, the SEC filings of the LF-RB Group fail to disclose that these individuals are soliciting proxies on behalf of the LF-RB Group.

38. The SEC did not clear the LF-RB Group to file a definitive proxy statement and to formally begin soliciting proxies with respect to the Annual Meeting until June 13, 2016.

39. However, on June 10, 2016, Defendant Gary Herman, a managing member of the LF-RB Group, solicited a shareholder of the Company via text message (the "June 10 Illegal Solicitation"), stating:

> ….my name is Gary Herman and I am the Managing Member of the group that has filed the contested proxy on rice bran. When you have a few minutes if you are to [sic] New York I would like to sit down with you to discuss our plan to turn around the company. If you are not in New York if you would have some time I would like to set up a call with you.

40. Upon information and belief, Defendant Gary Herman and other members of the LF-RB Group also committed the Illegal Proxy Solicitations in the same manner as the June 10 Illegal Solicitation via text message, email and through other written means during the course of the proxy contest.

41. Rule 14a-3(a) of the Proxy Rules provides, in part, that:

> [n]o solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with: (1) A publicly-filed preliminary or definitive proxy statement, in the form and manner described in § 240.14a-16, containing the information specified in Schedule 14A (§ 240.14a-101) . . .

42. Rule 14a-12 of the Proxy Rules provides, in part, that:

> "(a) [n]otwithstanding the provisions of § 240.14a-3(a), a solicitation may be made before furnishing security holders with a proxy statement meeting the requirements of § 240.14a-3(a) if: (1) Each written communication includes: (i) **The identity of the participants in the solicitation** . . . and a description of their direct or indirect interests . . . **or a prominent legend in clear, plain language advising security holders where they can obtain that information**; and (ii) **A prominent legend in clear, plain language**

- 9 -

**advising security holders to read the proxy statement when it is available** . . . (b) Any soliciting material published, sent or given to security holders in accordance with paragraph (a) of this section **must be filed with the Commission no later than the date the material is first published**, sent or given to security holders . . . [and with] ea**ch national securities exchange upon which any class of securities of the registrant is listed and registered**.

(emphasis added)

43. Each of the Illegal Proxy Solicitations, including the Illegal Galloway Solicitations, the Illegal Anmuth Solicitations and the June 10 Illegal Solicitation), constitutes "soliciting materials" subject to Rules 14a-3 and 14a-12 of the Proxy Rules, as the SEC has interpreted that term. Yet, the Company's shareholders were not provided with a copy of the LF-RB Group's preliminary proxy statement at the same time or prior to any of the Illegal Proxy Solicitations, as required by Rule 14a-3 of the Proxy Rules. Moreover, the Illegal Proxy Solicitations fail to contain the legend clearly mandated by the Proxy Rules, nor have they been filed with the SEC as required Rule 14a-12 of the Proxy Rules.

44. Accordingly, each of the Illegal Proxy Solicitations plainly violate Rule 14a-3 of the Proxy Rules.

45. The LF-RB Group has also filed documents with the SEC that fail to identify Messrs. Galloway and Anmuth (the "Undisclosed Participants") as participants in the solicitation of proxies in violation of the Proxy Rules and Schedule 13D Rules.

46. The LF-RB Group has also widely disseminated at least ten press releases and public filings since it initiated this proxy contest (the "Public Proxy Materials").

47. Each of the Public Proxy Materials violates Rule 14a-3 and Rule 14a-12 because, among other things, they fail to disclose the Undisclosed Participants as required by Rule 14a-12.

48. The Undisclosed Proxy Materials and the Public Proxy Materials are also replete with violations of Rule 14a-9 of the Proxy Rules.

49. Rule 14a-9(a) of the Proxy Rules provides, among other things, that no solicitation:

> …shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

50. To enforce Rule 14a-9, the SEC has required participants involved in a proxy or consent solicitation to abide by the following guidance in numerous comment letters:

- Avoid statements that directly or indirectly impugn character, integrity, or personal reputation or that make charges of illegal, improper, or immoral conduct without factual foundation.

- Each statement or assertion of opinion or belief must be clearly characterized as such, and a reasonable factual basis must exist for each such opinion or belief. Support for opinions or beliefs should be self-evident, disclosed in the proxy statement, or provided to the Staff on a supplemental basis.

- Avoid statements that refer to the opinions and beliefs of other unnamed stockholders.

51. However, the Undisclosed Proxy Materials and the Public Proxy Materials are rife with false and/or misleading statements, statements that impugn the character of the Board and management of the Company without factual foundation and statements of opinion without a reasonable factual basis.

52. Moreover, the LF-RB Group has violated the Schedule 13D Rules because its Schedule 13D, filed on April 29, 2016, Schedule 13D/A, filed on May 19, 2016, and Schedule 13D/A, filed on June 3, 2016, each fail to disclose that Mr. Galloway and Mr. Anmuth are members of its group and fail to disclose that two of the Dissident Nominees, Beth Bronner and Brent Rosenthal, are members of its group.

53. In the Schedule 13D/A filed by the LF-RB Group on June 3, 2016, the LF-RB Group states that on May 31, 2016, Mr. Baksa, Mr. Jacinto, Mr. Giles, Mr. Herman and Mr. Bellofatto, who collectively hold approximately 6.7% of the Company's

common stock, sent a notice to the Company nominating Mr. Herman, Mr. Goose, Mr. Baksa, Ms. Bronner and Mr. Rosenthal for election to the Company's Board of Directors. The Schedule 13D/A further states that the LF-RB Group had filed a preliminary proxy statement and accompanying proxy card "to be used by the LF-RB Group and other participants in this solicitation, Ms. Bronner and Mr. Rosenthal, to solicit proxies for the election of the LF-RB Group's slate of…director nominees."

54. However, neither Ms. Bronner nor Mr. Rosenthal appears on any cover page of the LF-RB Group's three Schedule 13Ds, as required by the Schedule 13D Rules. The LF-RB Group states that Beth Bronner does not own any shares in the Company, but Ms. Bronner is not a signatory to the Schedule 13D and therefore has not certified the extent of her ownership interests, if any, to the market. Mr. Rosenthal's ownership interest in the Company is not disclosed in the Schedule 13Ds at all, and is therefore completely unknown to the market.

55. Based on the foregoing, the LF-RB Group filings violate the Schedule 13D Rules because they fail to disclose in a Schedule 13D filing that they have been acting, and continue to act, as part of a "group" with respect to directing the voting of the Company's common stock. Each of Ms. Bronner and Mr. Rosenthal have clearly reached an understanding with the LF-RB Group whereby (1) Ms. Bronner and Mr. Rosenthal agreed to be nominated to the Company's Board by certain members of the LF-RB Group in their capacity as voting shareholders of the Company (and the Company is in possession of their consents to be nominated by the LF-RB Group); and (2) the members of the LF-RB Group agreed to vote their shares to elect Ms. Bronner and Mr. Rosenthal to the Company's Board. Beyond this obvious understanding to direct voting of the Company's shares, by the admission of the LF-RB Group in the Schedule 13D/A, each of Ms. Bronner and Mr. Rosenthal is an active "participant" in the solicitation of proxies on behalf of the LF-RB Group and their nominees. Accordingly, Ms. Bronner and Mr. Rosenthal are squarely within the meaning of a beneficial ownership group under Sections 13(d)(3) and Section 13(d)(5) of the

Exchange Act. Yet, the LF-RB has failed to properly disclose their affiliation with the LF-RB Group and to properly and publicly certify the amount and nature of their ownership interests in the Company, all in violation of the Schedule 13D Rules.

56. Upon information and belief, there are many other undisclosed members of the LF-RB Group in violation of the Proxy Rules, as well as the Schedule 13D Rules.

57. The LF-RB Group's Illegal Proxy Solicitations have materially and irreparably harmed the Company and its shareholders.

*The LF-RB Group Attempts to Formally Nominate the Dissident Candidates at the Annual Meeting Even Though the Nomination Notice was Defective.*

58. RiceBran held the Annual Meeting on June 22, 2016. At the Annual Meeting, Defendants formally nominated the Dissident Candidates.

59. The chairman of the Annual Meeting declared that the nominations were not made in accordance with the procedures prescribed by the Company's bylaws because the Nomination Notice was defective.

60. Defendants disputed the determinations of the chairman of the Annual Meeting.

## FIRST CAUSE OF ACTION

**(Declaratory Judgment With Respect To The Nomination Notice and the LF-RB Group's Formal Nomination and Solicitation of Proxies For The Dissident Candidates)**

61. RiceBran incorporates by reference the allegations set forth in Paragraphs 1 through 60 hereof as if fully set forth herein.

62. There exists a justiciable controversy between RiceBran and Defendants regarding the timeliness and validity of the Nomination Notice and the formal nomination of and solicitation of proxies for the Dissident Candidates.

63. Defendants failed to submit a timely and valid nomination notice in accordance with California law and the Company's Bylaws because, as set forth more

- 13 -

fully above, none of the Nominating Dissidents were shareholders of record of RiceBran when the Nomination Notice was delivered to the Board.  By the time the LF-RB Group purported to cure this deficiency, the deadline had passed to timely submit valid nominations of the Dissident Candidates with respect to the Annual Meeting.

64. The LF-RB Group also engaged in the Illegal Proxy Solicitations set forth more fully above.

65. The chairman of the Annual Meeting determined that the LF-RB Group could not formally nominate the Dissident Candidates at the Annual Meeting due to the defective Nomination Notice.

66. The LF-RB Group disputes this determination.

67. Accordingly, RiceBran is entitled to, and requests, a declaratory judgment that: (a) the Nomination Notice and formal nominations of the Dissident Candidates at the Annual Meeting were defective; (b) the nominations of the Dissident Candidates at the Annual Meeting were properly rejected by the chairman; and (c) all votes solicited in favor of the Dissident Candidates are null and void due to the defective Nomination Notice and the Illegal Proxy Solicitations.

## **PRAYER FOR RELIEF**

WHEREFORE**,** RiceBran seeks a judgment:

1. Declaring the nominations of the Dissident Candidates are defective as they were not made in accordance with the procedures prescribed by the Company's bylaws;

2. Declaring the nominations of the Dissident Candidates were properly rejected by the chairman of the Annual Meeting;

3. Declaring that all votes solicited by the LF-RB Group in favor of the Dissident Candidates are null and void due to the defective Nomination Notice and the Illegal Proxy Solicitations.

4. Awarding Plaintiff RiceBran the costs and disbursements of this action,

1  including reasonable attorneys' fees; and

2       5.    Granting Plaintiff RiceBran such other and further relief as this Court may deem just and proper.

4      DATED this 22nd day of June, 2016.

                                  OSBORN MALEDON, P.A.

                                  s/ Maureen Beyers
                                  Maureen Beyers
                                  2929 North Central Avenue, Suite 2100
                                  Phoenix, Arizona  85012-2793

                                  Lawrence Elbaum (*pro hac vice* to be filed)
                                  VINSON & ELKINS LLP
                                  666 Fifth Avenue, 26th Floor
                                  New York, New York 10103-0040

                                  **Attorneys for Plaintiff RiceBran Technologies**

6704144